IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TIARA DRAPER, | Case No. 4:16-CV-00528-SMR-SBJ |
| Plaintiff, | |
| v. | |
| CINEMA BREWERIES INC. d/b/a FLIX BREWHOUSE; FLIX BREWHOUSE IOWA, LLC d/b/a FLIX BREWHOUSE; and MARK MCLAUGHLIN, | ORDER ON MOTION TO DISMISS |
| Defendants. | |

Plaintiff Tiara Draper was a National Guard member while employed by Defendants. She routinely requested leave to fulfill her National Guard duties. Defendants terminated her employment, and Plaintiff now brings two counts alleging she was unlawfully terminated due to her National Guard membership. Defendants move to dismiss the second count—wrongful discharge—pursuant to Federal Rule of Civil Procedure 12(b)(6). As set forth below, Defendants' Motion to Dismiss, [ECF No. 3], is DENIED.

I. BACKGROUND[1]

Plaintiff began working at Flix Brewhouse as an Assistant Kitchen Manager in November 2014 and became the Kitchen Manager in 2015. Pet. ¶¶ 7, 11. Flix Brewhouse, Plaintiff's

---

[1] The following facts come from the Petition, [ECF No. 1-1 at 4–10], found within the Notice of Removal, [ECF Nos. 1, 1-1], and they are assumed true for purposes of the Motion to Dismiss. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010) (noting that courts must accept as true the plaintiff's factual allegations, but they need not accept as true the plaintiff's legal conclusions).

employer, is operated by Defendants Cinema Breweries, Inc., and Flix Brewhouse Iowa, LLC. *Id.* ¶¶ 3, 4, 6. Defendant Mark McLaughlin is the Vice President of Operations. *Id.* ¶ 24.

Plaintiff was a member of the National Guard at the time she worked for Defendants. *Id.* ¶ 8. This required her to take time off work to attend military-related events and programs. *Id.* ¶ 18. Plaintiff attended training in Texas for "a few weeks" after Defendants hired her. *Id.* ¶ 9. And from January 24, 2016, to February 6, 2016, Plaintiff attended military training in Fort Jackson, South Carolina. *Id.* ¶ 16. Plaintiff always informed Defendants of the requested leave as soon as she learned of an upcoming military-related training and continued to make schedules, answer calls, and respond to work e-mails while away. *Id.* ¶¶ 16, 17.

Plaintiff also worked elsewhere during her time at Flix Brewhouse. On December 24, 2015, Plaintiff informed Defendants she needed to find a second job. *Id.* ¶ 12. Defendants permitted Plaintiff to do so and Plaintiff began working for Kum & Go. *Id.* ¶¶ 13–14.

Defendants terminated Plaintiff's employment at Flix Brewhouse on March 2, 2016. *Id.* ¶ 26. Plaintiff alleges that the termination arose from Plaintiff's request for another military-related leave on January 15, 2016. *Id.* ¶¶ 19, 33, 44. Plaintiff sought to attend Officer Candidate School (OCS) training beginning in March for one weekend per month, for eighteen months in total, and for two whole weeks in June. *Id.* ¶ 19. Defendants never responded to Plaintiff's request. *Id.* ¶ 20. On March 18, 2016, Chef Gary Beauregard at Flix Brewhouse informed Plaintiff that "Officer Candidate School made [Plaintiff] increasingly unavailable and ultimately led to her termination." *Id.* ¶ 33.

Defendant McLaughlin was the one who terminated Plaintiff's employment and at the time told Plaintiff he did so because she broke a policy by having a second job. *Id.* ¶¶ 26, 27. More

specifically, Plaintiff had obtained another job at Noodle Zoo[2] and McLaughlin saw her working there the day before he terminated her. *Id.* ¶¶ 21, 25. Plaintiff never received the policy she allegedly violated and when she asked Katie Baker in Human Resources for the policy, Katie Baker stated that she did not have access to the policy handbook. *Id.* ¶¶ 29, 30.

Plaintiff brings two counts against Defendants. First, Plaintiff alleges Defendants violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA") by discriminating against Plaintiff due to her membership in the National Guard. *Id.* ¶¶ 39–48. Second, Plaintiff alleges Defendants committed a tort of wrongful discharge because terminating Plaintiff's employment due to her National Guard membership violates Iowa public policy evidenced in Iowa Code section 29A.43. *Id.* ¶¶ 49–58.

On October 7, 2016, Defendants filed a Motion to Dismiss Plaintiff's wrongful discharge count. [ECF No. 3]. Relying on Federal Rule of Civil Procedure 12(b)(6), they argue that Plaintiff fails to state a claim upon which relief can be granted because Iowa does not recognize an action for wrongful discharge in violation of section 29A.43's public policy.[3] [ECF No. 3-1 at 8].

II. STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement

---

[2] Plaintiff does not clarify whether this became her third job or if she quit Kum & Go before beginning work at Noodle Zoo.

[3] Defendants also argue that section 29A.43 does not provide for a private right of action. [ECF No. 3-1 at 3]. This argument is irrelevant because it misconstrues Plaintiff's second count. Plaintiff is not bringing a claim under section 29A.43. Instead, Plaintiff brings a wrongful discharge tort claim that relies on Iowa *public policy*, whose existence, as Plaintiff argues, is evident in section 29A.43. Pet. ¶¶ 50 ("It violates the public policy of the State of Iowa for an employer to fire an employee because of the employee's membership in the National Guard."), 51 ("The basis for this public policy is Iowa Code section 29A.43 . . . .").

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp*., 561 F.3d 778, 783 (8th Cir. 2009)). All reasonable inferences must be drawn in plaintiff's favor. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

III. ANALYSIS

"Absent a valid contract of employment, an employment relationship is generally considered to be inherently indefinite and presumed to be at-will." *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280 (Iowa 2000); *Balmer v. Hawkeye Steele*, 604 N.W.2d 639, 641 (Iowa 2000). "In Iowa an employer may discharge an at-will employee at any time 'for any *lawful* reason, that is, a reason that is not contrary to public policy.'" *Balmer*, 604 N.W.2d at 641 (quoting *Lockhart v. Cedar Rapids Cmty. Sch. Dist.*, 577 N.W.2d 845, 846 (Iowa 1998)). When a discharge is contrary to public policy, even under at-will circumstances, it constitutes a "tort of wrongful discharge." *Fitzgerald*, 613 N.W.2d at 281.

To show wrongful discharge, the employee must establish four elements. *Davis v. Horton*, 661 N.W.2d 533, 535 (Iowa 2003). First, there must be the "existence of a clearly defined public policy that protects an activity" in which Plaintiff engaged. *Id.*; *Fitzgerald*, 613 N.W.2d at 281–82. Second, the "policy would be undermined by a discharge from employment." *Davis*, 661 N.W.2d at 535; *Fitzgerald*, 613 N.W.2d at 281–82. Third, the "challenged discharge was the result of participating in the protected activity." *Davis*, 661 N.W.2d at 535; *Fitzgerald*, 613 N.W.2d at 281. Finally, there "was a lack of other justification for the termination." *Davis*, 661 N.W.2d at 535. "These requirements have been identified as the clarity element, jeopardy element, causation element, and absence-of-justification element." *Id.* at 535–36.

Here, Plaintiff argues that Iowa Code section 29A.43 clearly establishes a policy of encouraging military membership for national security and disaster relief. [ECF No. 6-1 at 6]. Defendants make three arguments as to why Iowa does not recognize a wrongful discharge tort claim under the public policy Plaintiff alleges is codified in section 29A.43. For the following reasons, all three arguments are without merit and Plaintiff's wrongful discharge claim must stand.

First, Defendants argue that since section 29A.43 itself does not provide a private cause of action, it also cannot give rise to any tort claim.[4] [ECF Nos. 3-1 at 8–9; 7 at 1–5]. However, Defendants' argument is unsupported. As an initial matter, the Iowa Supreme Court has allowed at one time private causes of action based on section 29A.43, undermining the premise behind

---

[4] A statute that provides the *exclusive* remedies for a cause of action would preclude a wrongful discharge claim. *See, e.g.*, *George*, 762 N.W.2d at 872; *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985) ("We believe that any remedies in which Northrup may be entitled would lie solely under chapter 601A and his independent common-law action cannot be recognized."). However, Defendants do not argue that the remedies within section 29A.43 are the exclusive remedies for discrimination based on National Guard membership, and the Court will therefore not address that argument.

Defendants' argument. *See Bewley v. Villisca, Iowa Cmty. Sch. Dist.*, 299 N.W.2d 904, 904 (Iowa 1980) (finding an employer violated section 29A.43 by forcing an employee to combine his vacation with his National Guard training time); *see also Davenport v. PARR Mfg.*, No. 85-163-E, 1986 WL 15687, at *2 (S.D. Iowa July 30, 1986) ("The Court denies defendant's motion on the basis of a previous order entered April 9, 1986, which found that Iowa Code § 29A.43 does authorize a private cause of action.").[5] And even when no private cause of action arises from the underlying statute, the Iowa Supreme Court has allowed wrongful discharge claims. *See Fitzgerald*, 613 N.W.2d at 286–87 (allowing a wrongful discharge claim based on a public policy against committing perjury where the perjury statute in question was criminal, making perjury a class D felony).

Moreover, Defendants provide only a single inapposite case in support of their first argument. That single case does not relate to wrongful discharge claims and the use of statutes to establish the requisite public policy. [ECF No. 3-1 at 8–9]. The cited case instead addresses only negligence claims and the unrelated issue of whether the duty and breach elements can be established by relying on a statute that does not provide a private cause of action. *Kolbe v. State*, 625 N.W.2d 721, 726–27 (Iowa 2001) (addressing a negligence claim and stating that a violation of a "statutory duty" is relevant only if there is a private cause of action).[6] The fact that Defendants

---

[5] A 2008 amendment to section 29A.43—well after the *Bewley* and *Davenport* decisions— added subsection 3, which states that "this section shall be prosecuted by the attorney general or the county attorney of the county in which the violation occurs." Military Forces—Leaves of Absence—Employment Security, H.F. 2065, 82d Gen. Assemb., 2d Reg. Sess. (Iowa 2008). Since then, no case has addressed whether a private cause of action continues to exist under section 29A.43. But even if the 2008 amendment eliminated a private cause of action under section 29A.43, a lack of private cause of action does not change this Court's analysis for wrongful discharge purposes, as explained further in this ruling.

[6] Even the cases cited in *Kolbe*, the single case Defendants cite, are unrelated to wrongful discharge claims and instead relate to establishing duty and breach for negligence claims in

might not have a duty arising from section 29A.43 in a negligence context says nothing about whether Iowa has clearly expressed a particular policy through section 29A.43 and whether violation of that independent policy gives rise to wrongful discharge.

Second, Defendants argue that section 29A.43 does not clearly express a public policy for a wrongful discharge claim. [ECF Nos. 3-1 at 9–11; 7 at 1–2]. However, Defendants again miss the directives of the Iowa Supreme Court. The Court has stated that a policy behind section 29A.43 is "the policy of encouraging membership" in the military. *Bewley*, 299 N.W.2d at 906. And the Court has used section 29A.43 as an example of a clear expression of public policy for wrongful discharge purposes. *Fitzgerald*, 613 N.W.2d at 283, n.3. In *Fitzgerald*, the Court addressed two alleged policies and first stated that it "primarily look[s] to [Iowa] statutes" to determine whether the alleged public policies are clear and well-recognized. *Id.* at 283. It then stated that "[s]ome statutes articulate public policy by specifically prohibiting employers from discharging employees for engaging in certain conduct or other circumstances." *Id.* As an example, the Court listed section 29A.43, among others. *Id.* at 283, n.3. Although dicta, this strongly indicates that the Iowa Supreme Court views section 29A.43 as providing the requisite public policy for wrongful discharge tort claims. *See George v. D.W. Zinser Co.*, 762 N.W.2d 865, 872 (Iowa 2009) (finding that Iowa Code section 88.9(3) provides a clearly expressed public policy and reasoning that section 88.9(3) was cited as an example of such policy in *Fitzgerald*).

---

reliance on a statute that does not provide a private cause of action. *Sanford v. Manternach*, 601 N.W.2d 360, 371 (Iowa 1999) ("Here, the plaintiff asserts that the State owes a duty . . . [and] that chapter 903A establishes such a duty . . . ."); *Marcus v. Young*, 538 N.W.2d 285, 288 (Iowa 1995) ("In order for a negligence claim to lie for a violation of a statutory duty, such provision must be made . . . by the statute. In the absence of such a provision, the violation of a statutory duty does not give rise to a private cause of action."); *Engstrom v. State*, 461 N.W.2d 309, 315 (Iowa 1990) ("[W]e examine plaintiffs' claim that an actionable duty is imposed by statute and administrative rule.").

To be sure, the language of section 29A.43 cuts against Defendants' second argument. Iowa Code section 29A.43(1) states, in part:

> A person *shall not discriminate* against any officer or enlisted person of the national guard . . . because of that membership. An employer, or agent of an employer, *shall not discharge a person from employment* because of being an officer or enlisted person of the military forces of the state . . . or hinder or prevent the officer or enlisted person . . . from performing any military service or civil air patrol duty the person is called upon to perform by proper authority. A member of the national guard or organized reserves of the armed forces of the United States ordered to temporary duty or service . . . for any purpose is *entitled to a leave of absence* during the period of the duty or service, from the member's private employment unless the employment is of a temporary nature. Upon completion of the duty or service, *the employer shall restore the person to the position held prior to the leave of absence* or employ the person in a position of like seniority, status, and pay. . . . The period of absence shall be construed as an absence with leave, and *shall in no way affect the employee's rights to vacation, sick leave, bonus, or other employment benefits* relating to the employee's particular employment.

Iowa Code § 29A.43(1) (Emphasis added). It is difficult to imagine a statute that more clearly expresses a public policy, whether it is encouraging military membership by providing employment security, like section 29A.43, or otherwise. *See Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 111 (Iowa 2011) ("Some statutes serve as fundamental sources of public policy by expressly protecting a specific employment activity from retaliation by the employer."). Indeed, in *Springer v. Weeks & Leo Co., Inc.*, 429 N.W.2d 558, 559 (Iowa 1988), the Iowa Supreme Court found a clearly expressed policy when the statute in question did not even expressly forbid terminating employees. Instead, and much less clearly and comprehensively than section 29A.43, it merely stated that "[n]o contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." *Id.* at 560 (quoting Iowa Code section 85.18 (1987)).

Third, Defendants argue that even if section 29A.43 clearly expresses a public policy, Plaintiff fails to show how Plaintiff's termination undermines that policy. [ECF Nos. 3-1 at 11–13;

7 at 2–5]. This argument is also without merit. A public policy is undermined when "the conduct engaged in not only furthered the public policy, but dismissal would have a chilling effect on the public policy by discouraging the conduct." *Fitzgerald*, 613 N.W.2d at 284. The public policy evidenced in section 29A.43 is to encourage and support National Guard membership "through an assurance against employer discrimination." *Bewley*, 299 N.W.2d at 906. Plaintiff was a member of the National Guard, thereby furthering the public policy. Pet. ¶ 8. And Plaintiff alleges facts indicating termination of Plaintiff's employment chilled the policy by discouraging military service. Specifically, Plaintiff requested leave to attend National Guard officer training, Defendants then terminated Plaintiff's employment, and Plaintiff was informed that Plaintiff's military-related absences led to the termination. *Id.* ¶¶ 19, 26, 33. Thus, by directly violating section 29A.43—discriminating against Plaintiff because of her National Guard membership—Defendants have directly undermined the public policy of encouraging National Guard membership.

Defendants nonetheless argue that the public policy is not undermined despite the termination because there exist "significant equitable, monetary, and penal incentives already in place to deter employers from discriminating against members of the military in employment." [ECF No. 3-1 at 12]. They argue that the existence of these incentives for the employer to comply with the public policy precludes the wrongful discharge claim. *Id.* The Iowa Supreme Court has never directly addressed this issue, and so this Court must predict what the Iowa Supreme Court would do. *See Hagen v. Siouxland Obstetrics & Gynecology, PC*, 799 F.3d 922, 929–31 (8th Cir. 2015) (predicting how the Iowa Supreme Court would rule when no Iowa Supreme Court cases were on point).

As an initial matter, Defendants do not cite any Iowa case law, and many of the cases cited are not on point. *See Mahony v. Universal Pediatric Servs., Inc.*, 753 F. Supp. 2d 839, 853–54 (S.D. Iowa 2010) (finding public policy was not undermined because Plaintiff did not engage in an activity protected by the public policy, and only passingly mentioning "financial incentives" at the end of as single sentence); *Serricchio v. Wachovia Secs., LLC*, Civil No. 3:05CV1761 (JBA), 2007 WL 433339, at *3 (D. Conn. Feb. 6, 2007) (addressing breach of the covenant of good faith and fair dealing, not wrongful discharge); *Schmauch v. Honda of Am. Mfg. Inc.*, 311 F. Supp. 2d 631, 635–36 (S.D. Ohio 2003) (addressing USERRA); *Veale v. Sprint Corp.*, Civil No. A. 95-2379-GTV, 1997 WL 49114, at *1 (D. Kan. Feb. 3, 1997) (addressing USERRA); *McAlee v. Indep. Blue Cross*, 798 F. Supp. 2d 601, 604 (E.D. Pa. 2011) (applying Pennsylvania law). And Plaintiff, too, could not find any Iowa Supreme Court cases expressly adopting Defendants' argument. [ECF No. 6-1 at 7].

Still, although the Iowa Supreme Court has not directly addressed whether the existence of significant incentives to conform to a public policy precludes a wrongful discharge claim, the Court has typically disregarded the existence of such incentives. For example, reporting child abuse is protected by public policy in Iowa even though failing to do so or interfering with its reporting can carry criminal and financial penalties. *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 300 (Iowa 1998); Iowa Code §§ 232.75, 903.1. Similarly, in another case, complaining to an employer about illegally withholding insurance benefits from the promised wages was protected by public policy in Iowa despite plaintiff having the option of filing a complaint with the labor commissioner under Iowa Code section 91A.10. *Tullis v. Merrill*, 584 N.W.2d 236, 237–38, 239 (Iowa 1998); *see also George*, 762 N.W.2d at 871–72 (allowing a wrongful discharge claim regarding complaints of IOSHA violations despite administrative

remedies within the IOSHA statute); *Tekippe v. State*, Civil No. 10-0464, 2011 WL 768659, at *3 (Iowa Ct. App. 2011) ("Contrary to the State's assertion, we further conclude this public policy will support a common law retaliatory discharge claim notwithstanding the existence of a wrongful discharge remedy within the statute."). Indeed, if an employer's action itself undermines public policy, it makes little sense to ignore such undermining action, pursuant to the wrongful discharge analysis, even if other incentives or safeguards existed to deter that action. Therefore, despite some other jurisdictions holding otherwise, the Iowa Supreme Court's disregard of incentives in its wrongful discharge analysis indicates public policy in Iowa is undermined even when incentives already exist to protect that public policy.

Additionally, although neither party relied on the Eighth Circuit Court of Appeals case law, such case law ought to be addressed given its precedential effect on this Court. *Hagen*, 799 F.3d at 929 ("In the absence of an intervening decision of the Iowa Supreme Court on the issue, the Eighth Circuit . . . is controlling precedent." (internal quotations omitted)). Defendants cited *Mahony v. Universal Pediatric Servs., Inc.*, 753 F. Supp. 2d 839 (S.D. Iowa 2010), *aff'd*, 643 F.3d 1103 (8th Cir. 2011). There, the defendant argued, as Defendants do here, that incentives already exist to protect the public policy in question and therefore permitting a wrongful discharge claim would be inappropriate. 753 F. Supp. 2d at 853. However, the Southern District of Iowa did not directly address that argument. It instead found that the public policy was not undermined because plaintiff did not engage in an activity protected by the public policy, and only passingly indicated that it stood firm in its finding "especially in light of the financial incentives already inherent in the regulations at issue." *Id.* at 853, 854. The Eighth Circuit then affirmed without addressing the incentive argument at all. *Mahony v. Universal Pediatric Servs., Inc.*, 643 F.3d 1103, 1107–08 (8th Cir. 2011). This indicates that *Mahony* is not controlling or instructive here.

To be sure, the Northern District of Iowa subsequently faced a similar argument in *Dutcher v. Mid Iowa Reg'l Hous. Auth.*, Civil No. 12-CV-3081-DEO, 2014 WL 1165856, at *16 (March 21, 2014 N.D. Iowa). The defendant there argued that "[b]ecause the FCA expressly provides the statutory retaliation remedy upon which [plaintiff] relies for Count I of his Complaint, [plaintiff] cannot maintain his common law cause of action based upon the same conduct." *Id.* The court was aware of *Mahony*, having cited it throughout its ruling. *Id.* Yet, it nonetheless allowed the wrongful discharge claim to survive a motion for summary judgment. *Id.* at 17.

Finally, the Eighth Circuit in *Hagen* recently reasoned that the Iowa Supreme Court would not extend the wrongful discharge claim to contractual employees, as it does to at-will employees, because contract provisions already provide sufficient protections and remedies. 799 F.3d at 929–30; *see also Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 684 (Iowa 2001) (holding, similarly to the Eighth Circuit, that independent contractors cannot bring a wrongful discharge claim in part because they, unlike at-will employees, have unique contractual remedies for protection). This reasoning could be extended to the at-will context to limit the wrongful discharge claim only to policies not already protected by other incentives or safeguards, as Defendants argue. However, given the Iowa Supreme Court's disregard for policy-conforming incentives in its wrongful discharge analysis so far, as explained above, extending the Eighth Circuit's *Hagen* reasoning would be inappropriate.

In sum, a lack of private action under section 29A.43 does not preclude a wrongful discharge claim; section 29A.43 establishes the requisite public policy; and already existing incentives to conform to public policy do not eliminate a wrongful discharge claim in Iowa.[7]

---

[7] The Court also notes that Defendants' arguments fundamentally conflict. Defendants argue that a lack of a private cause of action under section 29A.43 precludes a wrongful discharge claim, yet such lack of a private cause of action itself would be evidence against Defendants' other

Indeed, even if such incentives eliminated the wrongful discharge claim, Defendants do not explain when such incentives become "significant" for the sake of their argument.

IV. CONLCUSION

Resolution of the motion at issue without oral argument is appropriate. *See* LR 7.c. For the foregoing reasons, Defendants' Motion to Dismiss, [ECF No. 3], is DENIED.

IT IS SO ORDERED.

Dated this 6th day of January, 2017.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT

---

argument that there are sufficient policy-conforming incentives that make a wrongful discharge claim unwarranted.